FILED
JUL 24 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 08-170 |
| v. | |
| ADAM BRYANT, | VIOLATIONS: 18 U.S.C. § 2423(b), (Traveling in Interstate Commerce for purpose of engaging in Sexual Contact with a Minor); 22 D.C. :Code § 3010(b) (Enticing a Child) |

## STATEMENT OF OFFENSE

The parties in this case, the United States of America and the defendant, Adam Bryant, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offenses; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. On March 25, 2008, members of the Innocent Images Task Force and an undercover Fairfax County police officer, posted a message in the Craigslist.com erotica section which read: "Family Fun for discrete clientele only. Serious inquiries only. For more information, hit me back for more details. In town until Thursday, March 27." Within five minutes of posting that message, and individual who was later identified as the defendant, using the screen name "Let's Play", sent an email message, suggesting that he and the person who wrote the posting meet very shortly in a coffee shop on Connecticut Avenue in Washington, D.C. The defendant identified himself as a 29 year-old consultant residing in the District of Columbia.

2. During the course of e-mail and telephone conversations, the undercover

explained to the defendant that the undercover was the father of the girl, the girl was his step-daughter, he had just lost his job, and that the "13 y[ear-]o[ld] [is his] step dau[ghter] who is willing to work for daddy". The undercover sent the defendant a picture of the girl, via the internet.

3. Once the defendant received the picture of the little girl, the defendant suggested that the step-father allow his step-daughter and one of her friends to come to D.C. from Virginia, for "24 hours". Defendant volunteered to pick the girls up and drop them back off. The undercover did not agree to that scenario, and told the defendant that he would want $1000 for the defendant to have sex with his step-daughter.

4. The defendant agreed to pay $1000 in exchange for sex with the fictitious child, stating that the amount was the "going rate" for sex with a 13 year-old. The defendant then specified what he wanted to do with the 13 year-old girl. The defendant listed:

*Anal(bareback)*

*Swallowing*

*Sex(condoms)*

*Eating her out*

*And playing with her in public*

*Her fingering herself*

*Also, I would love to rry and get as many fingers into her as possible that that is optional depending on her experience and I would like her shaved smooth.*

During another point in the e-mail conversation, the defendant informed the undercover that the girl "will be spanked", but assured, "I will be gentle".

5. Defendant agreed to meet the undercover and his "step-daughter" at Champs Restaurant in Arlington, Virginia on March 26, 2008. Defendant instructed the undercover that he wanted the girl to wear the "shortest shorts she has, lowest cut shirt, no bra, no panties." Defendant told the undercover that once at the restaurant, he wanted the girl "sitting at the table with her shorts unbuttoned and her hand in her pants fingering herself...", and that he wanted to videotape and take pictures.

6. That night, the defendant arrived at the agreed upon restaurant. The "step-daughter" called the defendant on his mobile phone, and asked the defendant where her father was, telling him that she had to use the bathroom. The defendant told the "step-daughter" that she was supposed to be inside the bar with no panties on and fondling herself. After that conversation, the defendant was arrested. A subsequent search revealed that the defendant was in possession of $400 in cash, a personal check in the amount of $600.00, a video camera, and a camera cell phone.

_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney

_____
STEVEN MCCOOL, ESQ.
Attorney for Defendant

_____
ADAM BRYANT
Defendant

_____
Date

6/12/08
_____
Date

## DEFENDANT'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have discussed it with my attorney, Steven McCool, Esq. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 6/12/2008

ADAM BRYANT
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/12/08

STEVEN MCCOOL, ESQ.
Attorney for Defendant Adam Bryant